**United States District Court**
For the Northern District of California

1
2
3
4

**NOT FOR CITATION**

5

6                    UNITED STATES DISTRICT COURT

7                    NORTHERN DISTRICT OF CALIFORNIA

8

9    MARY J. HONG,

10          Plaintiff,                          No. C 04-4011 PJH

11    v.                                        **ORDER GRANTING DEFENDANT'S**
                                                **MOTION FOR SUMMARY JUDGMENT**
12    RIGHT MANAGEMENT                          **IN PART AND DENYING IT IN PART**
      CONSULTANTS, INC.,
13
            Defendant.
14    _____/

15          Defendant Right Management Consultants, Inc.'s ("Right" or "defendant") motion for

16    summary judgment came on for hearing on February 1, 2006, before this court. Having

17    read the parties' papers and carefully considered their arguments and the relevant legal

18    authorities, and good cause appearing, the court GRANTS the motion in part and DENIES

19    it in part as follows and for the reasons stated at the hearing.

20                              **INTRODUCTION**

21          Hong was employed by Right from August 1996 until April 1999, and again in

22    October 2000 until April 2003, as a client services consultant ("CSC"). She brings four of

23    her seven claims under California's Fair Employment and Housing Act, Government Code

24    § 12940 et seq. ("FEHA"), including claims for (1) sexual harassment; (2) gender

25    discrimination; (3) failure to prevent violations; and (4) retaliation. Hong also asserts claims

26    under state law for: (5) wrongful termination in violation of public policy; (6) intentional

27    infliction of emotional distress; and (7) negligent infliction of emotional distress.

28

**United States District Court**
For the Northern District of California

## BACKGROUND

Hong was employed by Right for nearly three years in its San Francisco office from 1996-1999 as a CSC, a position that Right characterizes as a "salesperson."  During that time, Hong was supervised at least in part by Tim Dorman, James Greenway's ("Greenway") predecessor.  Hong voluntarily left Right to pursue other business opportunities in 1999.

In September 2000, Greenway became Executive Vice President (EVP) of Right's Western Group, taking over Tim Dorman's position.  Around that same time, Greenway recruited Hong to return to Right's San Francisco Office.  He offered Hong a position as Regional Managing Principal ("RMP") for Northern California, which Hong declined.  Instead, Hong returned as a CSC, level 3.  The primary job of a CSC is to develop new business and manage existing client accounts.  At the time Hong returned, an RMP (the position Hong was originally offered) had not yet been hired, so Greenway was Hong's interim immediate supervisor.  That same fall 2000, Greenway also hired Kirk Maxfield ("Maxfield") for a CSC position, a colleague of Hong's who worked closely with her and later became one of her closest allies at Right.

Greenway then hired several RMPs who immediately supervised both Hong and Maxfield during 2001.  John Beck was among those hired.  Beck was hired in January 2001, and he left Right several months later in April 2001.  Hong claims that Beck was asked to leave; whereas, Right contends that Beck quit because of Hong's and Maxfield's insubordination.

In April 2001, Greenway hired Christine Mellon ("Mellon") to serve as RMP.  Mellon was RMP and Hong's immediate supervisor until January 2002.  During this time, Hong alleges that Greenway began sexual relationships with at least two Right employees, including Irene Holland ("Holland") and Emily Mora ("Mora").  Hong, however, did not report or complain about the relationships.

In June 2001, Greenway promoted Hong to a CSC, level 4 position.  Around that

2

United States District Court

For the Northern District of California

1   same time, Right announced the development of a new program to recognize its top

2   performing employees, called the President's Advisory Council (also "PAC").

3         In November 2001, Mellon gave Hong a formal performance evaluation.  The

4   parties' characterization of the evaluation differs.  Right casts it in a much more negative

5   light than Hong.[1]  That same month, Hong claims to have observed Greenway become

6   intoxicated at a company training event in Carmel, California, and grab the buttocks of

7   another female Right employee, Michele Pirnik.  She also claims that Greenway had sexual

8   relationships that weekend with employees Mora and Holland.  Again, Hong did not report

9   or complain about Greenway's conduct, though.

10         One month later, in December 2001, Greenway selected Hong for Right's

11   President's Advisory Council.  Soon after, in early January 2002, Jay Klein ("Klein")

12   replaced Mellon as RMP and became Hong's immediate supervisor.  It was primarily during

13   Klein's tenure as RMP that Hong claims that she was discriminated against on the basis of

14   her gender and subjected to sexual harassment.  Right, on the other hand, contends that

15   Hong, along with Maxfield, was insubordinate, unmanageable, and plagued with

16   performance problems.

17         Klein allegedly "counseled" Hong on a number of occasions in 2002 and 2003

18   regarding her performance.  The first time was just a couple of weeks after he became

19   RMP, when on January 23, 2002, he counseled her for disregarding management

20   structure.  He again counseled her in early March 2002 regarding her resistance to

21   changes that he was implementing.

22         Hong meanwhile complained to Greenway regarding Klein's alleged gender-based

23   discrimination and harassment.  In March 2002, Hong complained to Greenway that Klein

24   had difficulty working with women.

25

26         [1]Mellon gave Hong a seemingly decent performance evaluation in late 2001 that, in retrospect, she characterized as "overly rosy" several years later in her deposition testimony.

27   Mellon claims that Greenway had encouraged her to keep a favorable tone with Hong in her performance review.

28

**United States District Court**
For the Northern District of California

Around this same time, in either March or April 2002 (Hong alleges early April 2002; whereas, Right asserts it was early March 2002), Hong was informed by Maxfield that another Right coworker, Michael Gaines ("Gaines"), had referred to Hong as a "fucking matriarch" on either two or three occasions.  Hong, however, did not personally overhear or witness Gaines' comments.

On April 2, 2002, Klein again counseled Hong, this time regarding her lack of teamwork and difficulties working with her.  Two days later, on April 4, 2002, Hong reported Gaines' comments to Klein.  Right asserts that on that very same day, Gaines was issued a written warning, and that the problem immediately ceased.[2]  Klein also again spoke with Hong that day regarding difficulties working with her.  On April 9, 2002, Klein issued a written summary of Hong's performance and work-related issues.

In May 2002, Hong and Klein both attended a function in the Bahamas honoring members of Rights' President's Advisory Council.  Shortly after, Hong complained to Greenway regarding Klein's treatment of female employees at the Bahamas function.  Hong complained that Klein repeatedly referred to women as "girl," "honey," and "sweetheart."  Hong also contends that at that same function, Rich Pinola ("Pinola"), Right's CEO and board chairman, groped and propositioned her.  Hong, however, never reported Pinola's misconduct.  One month later, in June 2002, Hong contends that she renewed her complaints regarding Klein with Greenway.

On August 28, 2002, Klein held a staff meeting.  Right contends that Klein and Maxfield got into a heated argument at the meeting, and that Hong inappropriately aligned herself with Maxfield.  After the meeting, Klein apparently recommended to Greenway that both Hong and Maxfield be terminated based on their conduct during the meeting.

---

[2]Klein did not supervise Gaines.  Instead, Paul Wright, the Managing Vice President of Right's Organizational Consulting (OC) Group for the Pacific Northwest region was responsible for supervising Gaines.  On May 24, 2002, Wright issued a warning memo to Gaines regarding the incident.

4

United States District Court

For the Northern District of California

1   Greenway agreed to the termination of Maxfield, but Right asserts that Greenway "saved

2   Hong's job" and refused to fire her.

3       Hong complained to Greenway after the meeting that Klein had set both she and

4   Maxfield up for ridicule.  She contends that Greenway refused to initiate a human resources

5   investigation of Klein thereafter.

6       On November 26, 2002, Klein gave Hong a negative performance review, following

7   which Right asserts that she received the lowest overall rating for any CSC in the office.  In

8   January 2003, Klein again counseled Hong regarding her performance.

9       In April 2003, Right underwent a national reduction in force ("RIF").  Klein apparently

10  initially recommended to Greenway that only one male CSC, Peter Engler ("Engler"), be

11  fired.  Greenway, however, suggested that Klein consider adding Hong to his list.  Klein

12  revised the list, added Hong, and Greenway approved her termination.

13      On March 29, 2004, Hong filed an administrative charge with the California

14  Department of Fair Employment and Housing ("DFEH") and was issued a right to sue letter.

15  Hong filed her complaint in state court on September 8, 2004.  On September 22, 2004,

16  Right answered the complaint and removed the case to federal court.  Right filed its motion

17  for summary judgment on December 22, 2005.

18                              **DISCUSSION**

19  **A.    Legal Standard**

20      Summary judgment is appropriate when there is no genuine issue as to

21  material facts and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P.

22  56.  Material facts are those that might affect the outcome of the case.  *Anderson v. Liberty*

23  *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there

24  is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

25      A party seeking summary judgment bears the initial burden of informing the court of

26   the basis for its motion, and of identifying those portions of the pleadings and the discovery

27  responses that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*

28
                                    5

United States District Court

For the Northern District of California

*v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the court that there is an absence of evidence to support the nonmoving party's case.  *Id.*  If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion.  *Anderson*, 477 U.S. at 250.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 250.  "To show the existence of a 'genuine' issue, . . . [a plaintiff] must produce at least some significant probative evidence tending to support the complaint."  *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).  The court must view the evidence in a light most favorable to the nonmoving party.  *United States v. City of Tacoma*, 332 F.3d 574, 578 (9th Cir. 2003).  The court must not weight the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial.  *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999).

Deference to the nonmoving party has some limits.  Thus, a plaintiff cannot rest on the allegations in her pleadings to overcome a motion for summary judgment.  *Brinson v . Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995).  Self-serving affidavits will not establish a genuine issue as to material fact if they fail to state facts based on personal knowledge or are too conclusory.  *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001).  If the nonmoving party fails to show that there is a genuine issue of fact for trial, "the moving party is entitled to judgment as a matter of law."  *Celotex*, 477 U.S. at 323.

Regardless of whether plaintiff or defendant is the moving party, each party must "establish the existence of the elements essential to [its] case, and on which [it] will bear

6

United States District Court

For the Northern District of California

1   the burden of proof at trial." *Celotex*, 477 U.S. at 322.

2   **B.      Defendant's Motion for Summary Judgment**

3           Right now seeks summary judgment on all seven claims alleged in Hong's

4   complaint.

5           1.      Sexual Harassment Claim

6           Hong alleges two bases for her harassment claim:  (1) that a hostile and abusive

7   work environment existed based on Klein's conduct toward her, and based on the

8   treatment of women generally in the workplace; and (2) Right created intolerable working

9   conditions by allowing widespread sexual favoritism.

10                  a.      Hostile Environment based on Klein's Conduct Directed at Plaintiff

11          Hong contends that she was a constant target of Klein's harassing behavior.  Hong

12  alleges that Klein often berated her and made disparaging comments about her

13  professional ability and competence.  She provided numerous examples of Klein's alleged

14  harassing conduct, including:

15          •       Treating her in a dismissive, sexist manner by raising his hand to her for her

16                  to "shut up" when she disagreed with him, something that he did not do to

17                  male CSCs;

18          •       Stepping in front of Hong to block others' view of her as if she were non-

19                  existent to demean and intimidate her, again something Hong alleges Klein

20                  did not do to male CSCs;

21          •       Standing over Hong and pointing his finger while berating her in an effort to

22                  upset and intimidate her;

23          •       Humiliating Hong in front of fellow employees by wrongfully accusing her of

24                  not selling enough, while exempting male employees from such treatment;

25          •       Refusing to acknowledge that derogatory term "fucking matriarch" constituted

26                  sexual harassment under Right's policy;

27          •       Excluding Hong from training sessions, company task forces and executive

28                                                          7

1    dinners;

2    •    Assigning accounts that Hong brought in to male counterparts; and

3    •    Praising Hong's male peers in sales meetings, while deliberately singling

4         Hong out and accusing her of not selling enough.

5    She argues that Right is strictly liable for Klein's sexual harassment.

6         Right argues that Klein never made a gender-based derogatory remark to Hong

7    herself.  *Kortan v. California Youth Auth.*, 217 F.3d 1104, 1108, 1110 (9th Cir. 2000).  Right

8    also contends that the record shows that Klein did not in fact give males preferential

9    treatment, and notes that Klein supervised three male CSCs, including Maxfield, Engler,

10   and Michael Markavage.  Right further notes that Klein recommended that both Maxfield

11   and Engler be terminated, and they in fact were terminated.  As for the remaining CSC,

12   Markavage, Right asserts that there is no evidence that Klein treated him differently than

13   the other CSCs; and that regardless, he was not comparable to Hong because he was a

14   CSC 3 – not a CSC 4, as was Hong.[3]

15        To state a prima facie case for "hostile environment" sexual harassment under

16   FEHA, plaintiff must allege that she: (1) was subjected to unwelcome sexual advances,

17   conduct or comments; (2) the harassment complained of was based on sex; and (3) the

18   harassment was "so severe or pervasive" as to "alter the conditions of the victim's

19   employment and create an abusive working environment."  *Meritor Sav. Bank v. Vinson*,

20   477 U.S. 57, 67 (1986); *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 608

21   (Cal. Ct. App. 1989) (adopting federal case law for hostile environment sexual harassment

22   claims under California law).  Additionally, in order to render the employer liable for hostile

23   environment harassment, plaintiff must prove that the employer knew or should have

24   _____

25        [3]Regarding the other male employees that Hong claims received favorable treatment
     from Klein, Gaines and Bob Gilbert, Right argues that neither reported to Klein and that "Klein
26   did not have the authority to give them preferential treatment."  Right points out that Gaines
     and Gilbert were not CSCs or salespersons, but were instead organizational consultants.
27

28                                              8

United States District Court

For the Northern District of California

1  known of the harassment and failed to take prompt remedial action.  *See* Gov.C. §

2  12940(j)(1).  Under FEHA, an employer is strictly liable for workplace harassment by a

3  supervisor.  *State Dept. of Health Services v. Sup.Ct. (McGinnis)*, 31 Cal.4th 1026, 1042

4  (Cal. 2003).

5       Offensive words and conduct that are directed at an employee because of his or her

6  gender may create a hostile workplace environment even though the words and conduct

7  are not sexual in nature.  *See Birschtein v. New United Motor Mfg., Inc.*, 92 Cal.App.4th

8  994, 1001-1002 (Cal. Ct. App. 2001); *see also Accardi v. Sup. Ct.*, 17 Cal.App.4th 341, 348

9  (Cal. Ct. App. 1993) (citing approvingly *Andrews v. City of Philadelphia*, 895 F.2d 1469,

10  1485 (3rd Cir. 1990) ("the pervasive use of derogatory and insulting terms relating to

11  women generally and addressed to female employees personally may serve as evidence of

12  a hostile environment")).  "To plead a cause of action for [hostile environment] sexual

13  harassment, it is only necessary to show that gender is a substantial factor in the

14  discrimination and that if the plaintiff "had been a man she would not have been treated in

15  the same manner."  *Birschtein*, 92 Cal.App.4th at 1001.  "Offensive comments alone may

16  cause an employee's work environment to be sufficiently hostile to constitute actionable

17  harassment if they are pervasive enough to interfere with the reasonable victim's work

18  environment."  *Mayfield v. Trevors Store, Inc.*, 2004 WL 2806175 at *4 (N.D. Cal. 2004)

19  (citing *Birschtein*, 92 Cal.App.4th at 1002).

20       The court finds that Hong's testimony and that of her co-workers Craig and Maxfield,

21  raise a triable issue of fact as to whether the numerous instances of alleged misconduct by

22  Klein, as directed at Hong, were based on her gender.  Craig's and Maxfield's credibility will

23  be issues for the jury.

24          b.    Hostile Environment based on Male Conduct Directed at Plaintiff
              and Other Women

25       Hong also argues that a hostile work environment existed for female employees

26  generally at Right.  She contends that both Klein and Greenway contributed to this hostile

27

28                          9

United States District Court

For the Northern District of California

work environment.  Hong notes that in contrast to the "overt sexist hostility" that Klein exhibited towards her, he often demeaned younger female employees in the manner in which he referred to and touched them.  Hong asserts that she personally witnessed Klein's behavior toward other female employees and also received complaints from these women who were afraid to lodge a formal complaint.  In support, Hong relies on her declaration and deposition testimony from Maxfield.  Specifically, Hong asserts that Klein would regularly:

- Refer to younger female employees as "girls," "sweetheart," and "honey;"

- Lurch forward, stare, and "do the rundown" with his eyes over the bodies of female subordinates; and

- Put his arms around female employees, pressing his chest up against their back or touching elbows with them.

Hong also personally observed Greenway's conduct towards female employees, and knew that Greenway was having sexual relationships with several female Right employees. In her declaration, Hong asserts that CEO Pinola propositioned her at a corporate event. Hong further relies on deposition testimony from another Right employee, Gayle Weibley, that she, too, was propositioned by CEO Pinola.

Right argues that Hong's hostile environment claim must fail for several reasons, including that:  (1) many of the allegations are time-barred; (2) Hong cannot base her claim on conduct of which she was not personally aware; and (3)  the alleged conduct was not severe and pervasive.

i.    Time Bar/Exhaustion/Continuing Violation

Right argues that Hong may not base her sexual harassment claim on Gaines', Greenway's, or Pinola's conduct because these allegations are time-barred since Hong failed to file a timely administrative charge.  *Richards v. Ch2m Hill*, 26 Cal.4th 798, 823 (Cal. 2001).  Hong counters that Gaines', Greenway's, and Pinola's conduct is not time-barred based on the "continuing violation doctrine."  She argues that "systematic discrimination practices" occurred at Right, and that the allegations are therefore actionable even if some

United States District Court

For the Northern District of California

1   or all occurred prior to the limitations period.  *Meritor*, 477 U.S. at 69.  Further, Hong argues

2   that the allegations should be considered exhausted because they are sufficiently similar to

3   those allegations included in her administrative claim and that the administrative claim

4   should be construed liberally.  *Baker v. Children's Hospital Medical Center*, 209 Cal.App.3d

5   1057 (Cal. Ct. App. 1989).

6          Under FEHA, an employee must exhaust the administrative remedy provided by the

7   statute by filing a complaint with the Department of Fair Employment and Housing (DFEH)

8   and must obtain from the DFEH a notice of right to sue in order to be entitled to file a civil

9   action in court based on FEHA violations.  *Romano v. Rockwell Internat'l, Inc.*, 14 Cal.4th

10  479, 492 (Cal. 1996).  The timely filing of an administrative complaint is a prerequisite to

11  bringing a civil action for damages under FEHA.  *Id.*  Regarding the applicable limitation

12  period, FEHA provides that no complaint for any violation of its provisions may be filed with

13  DFEH "after the expiration of one year from the date upon which the alleged unlawful

14  practice or refusal to cooperate occurred."  *Id.* (citing Gov.C. § 12960).

15         However, under the continuing violation doctrine, California courts have recognized

16  that employers will be "liable for actions that take place outside the limitations period if these

17  actions are sufficiently linked to unlawful conduct that occurred within the limitations period."

18  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1056 (Cal. 2005) (citing *Richards*, 26

19  Cal.4th at 812).  The California Supreme Court has noted that "[i]n order to carry out the

20  purpose of the FEHA to safeguard the employee's right to hold employment without

21  experiencing discrimination, the limitations period set out in the FEHA should be interpreted

22  so as to promote the resolution of potentially meritorious claims on the merits."  *Richards*, 26

23  Cal.4th at 819.

24         In determining whether the continuing violation doctrine should apply, the court

25  considers whether "the employer's actions were (1) sufficiently similar in kind – recognizing .

26  . . that similar kinds of unlawful employer conduct, such as acts of harassment or failures to

27  reasonably accommodate disability, may take a number of different forms; (2) have occurred

28
                                              11

**United States District Court**
For the Northern District of California

1   with reasonable frequency; and (3) have not acquired a degree of permanence." *Id.* at 823.

2

3       This case is nearly identical to *Medix Ambulance Service, Inc. v. Superior Court.* 97

4   Cal.App.4th 109 (Cal. Ct. App. 2002).  In *Medix*, the court held that the plaintiff had not

5   administratively exhausted her employment claims against individual defendants where she

6   failed to name the individual defendants in either the caption or the body of her

7   administrative charge.  *Id.* at 117-18.  The state appellate court examined its prior decisions

8   on the issue, and noted that since its prior decisions, the form administrative charge had

9   been revised to put claimants on notice that they needed to specifically identify individuals –

10  not just the named employer.  *Id.* at 117-18 (noting that "[t]he word 'person' has been

11  inserted after 'employer' in the [caption] section seeking the identity of the alleged

12  discriminator" and additionally that "the form has a place for individual discriminators to be

13  identified").  The form approved by the *Medix* court was the very form utilized by Hong here.

14      Hong identified "Right Management" on her administrative charge, and specifically

15  listed Jay Klein as the alleged discriminator.  The body of Hong's charge, which included a

16  three and one-half page description of the conduct giving rise to the charge, does not

17  mention Pinola or Gaines by name at all.  It mentions Greenway, but only to explain Hong's

18  hiring and the person to whom she complained regarding Klein.  It does not mention any

19  alleged misconduct by Greenway.  However, it does, without naming Gaines, specifically

20  reference the incident regarding Gaines' "fucking matriarch" comment.[4]

21  _____

22      [4]Plaintiff's administrative complaint asserts:

23      Klein not only contributed to the disparate treatment of Right's female managers
    and staff, he also endorsed the derogatory and harassing behavior of certain

24  male employees by failing to address complaints raised by female employees.
    In April 2002, one of the younger male employees repeatedly referred to me as

25  a "fucking matriarch."  I was deeply offended by the derogatory remarks and
    notified Mr. Klein in writing to that effect.  Mr. Klein discounted my concern by

26  responding that he did not find the comment "matriarch" to be "bad or offensive."
    Right claims that this male employee was counseled for his remarks.  However,

27  I was never notified of any investigation or disciplinary action taken against the

28      12

United States District Court

For the Northern District of California

1    As a result, the court concludes that Hong has not administratively exhausted the

2  allegations regarding Greenway or Pinola.  *See id.* (trial court properly sustained employer's

3  demurrer to sexual harassment claims where "plaintiff neither listed [individual

4  discriminators] in the administrative charge [caption], nor did she name them in the body of

5  the complaint form as alleged perpetrators").  She has, however, exhausted the allegations

6  regarding Gaines.

7    The court further finds that the sexual affairs that Hong has alleged with respect to

8  Greenway and Pinola do not constitute  "continuing violations" under the state law standards

9  set forth above.  The course of conduct to which Hong objected, and which was the subject

10  of her administrative complaint, concerned Klein's treatment of her and female employees in

11  general – not the sexual affairs currently alleged.  To the extent that Hong's administrative

12  complaint alleged conduct involving Greenway, it concerned only his inadequate follow-up to

13  her complaints regarding Klein.

14    This case is unlike those in which the courts have found that the continuing violation

15  doctrine should permit the inclusion of time-barred, unexhausted allegations.  Those cases

16  involved a course of failure or refusal to accommodate a disabled employee, *see Richards*,

17  26 Cal.4th at 821, or a course of retaliatory conduct.  *See also Yanowitz*, 36 Cal.4th at 1058.

18  Here, the alleged affairs and misconduct by Greenway and Pinola are not sufficiently similar

19  in kind to the facts and misconduct alleged by Hong in her administrative charge regarding

20  Klein.  *See Richards*, 26 Cal.4th at 823.  For this reason, Hong will be prohibited from

21  utilizing arguments and evidence of Greenway's and Pinola's alleged affairs and related

22  misconduct as bases for her sexual harassment claim.

23                          ii.    Conduct Directed at Others

24    Right also argues with respect to Greenway's sexual relationships with Holland and

25  Mora, that his conduct cannot form the basis for a hostile working environment claim

26  ────────────────

        individual.

27

28                                      13

United States District Court

For the Northern District of California

1  because it was not directed at Hong and did not occur in her "immediate work environment."

2  *Fischer*, 214 Cal.App.3d at 610-11; *see also Beyda v. City of Los Angeles*, 65 Cal.App.4th

3  511, 528 (Cal. Ct. App. 1998).  Right asserts that Hong cannot establish a hostile

4  environment claim based on the testimony of others – including Craig, Maxfield, and

5  Weibley – if she neither experienced nor knew about the incidents to which they testified.

6      "Whether an environment is hostile or abusive can be determined only by looking at

7  all the circumstances."  *Harris v. Forklift Systems*, 510 U.S. 17, 23 (1993).   Those

8  circumstances include the frequency of the discriminatory conduct; its severity; whether it is

9  physically threatening or humiliating, or a mere offensive utterance; and whether it

10  unreasonably interferes with an employee's work performance."  *Id.*  "Evidence of the

11  general work atmosphere, involving employees other than the plaintiff, is relevant to the

12  issue of whether there existed an atmosphere of hostile work environment."  *Fischer,* 214

13  Cal.App.3d at 610-611.  "[O]ne who is personally subjected to offensive remarks and

14  touchings can establish a hostile work environment by showing the harassment existed in

15  the place of employment."  *Id.; see also Beyda*, 65 Cal.App.4th at 519 (concluding that

16  "incidents of sexual harassment directed toward other employees in the work environment

17  [are] relevant to th[e] evaluation" of whether a hostile environment existed).

18      However, where the plaintiff is not personally subjected to the offensive remarks or

19  touching, the plaintiff must establish that she personally witnessed the harassing conduct or

20  was otherwise aware of it.  *Beyda*, 65 Cal.App.4th at 519.  Otherwise, that conduct "cannot

21  alter the conditions of her employment and create an abusive working environment."  *Id.*

22  Accordingly, harassment directed toward others of which plaintiff was unaware when it

23  occurred has no bearing on whether plaintiff reasonably considered her working

24  environment abusive.  *Brooks v. City of San Mateo*, 229 F.3d 917, 924 (9th Cir. 2000).

25      As discussed above, Hong has not exhausted the allegations regarding Greenway

26  and Pinola's conduct, and is precluded from introducing these allegations for that reason.

27      Additionally, the court finds that Hong may not rely on evidence regarding Pinola's

28

14

United States District Court

For the Northern District of California

conduct toward Gayle Weibley and Pinola's conduct toward other Right employees because Hong was not aware of the conduct.  However, that is not the case regarding Greenway. Hong has introduced sufficient evidence that she was aware of Greenway's affairs, and that is all that is required under the circumstances.  Nevertheless, as set forth above, Hong cannot rely on the evidence concerning Greenway's affairs because such allegations are unexhausted.

As for Klein's conduct toward other female employees, the court finds that Hong has submitted sufficient evidence that she was aware that such conduct was occurring. Accordingly, Hong may rely on evidence regarding *Klein's* conduct toward other women in the workplace in support of her hostile environment sexual harassment claim.

iii.     Severity

Right also argues that the alleged incidents involving Klein constituted "simple teasing" and are insufficient to state a claim for hostile environment harassment.  Right further contends that the alleged conduct was too isolated and sporadic.

The level of severity required to transform a merely annoying or uncomfortable work environment into an actionable, sexually harassing "hostile environment" is usually a question of fact to be determined by looking at all of the circumstances.  *See Harris*, 510 U.S. at 22-23.  Those circumstances include the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or merely offensive, and whether it unreasonably interferes with an employee's work performance.  *Id.*

"Isolated incidents, unless extremely serious, will not amount to a discriminatory change in the terms and conditions of employment."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  A single incident generally will not be sufficient unless it is very severe.  *Clarke Co. School Dist. v. Breeden*, 532 U.S. 268, 271 (2001); *see also Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991).

In evaluating this issue, the court has considered Klein's conduct toward other female employees, in addition to that directed at Hong, to determine whether his conduct was

United States District Court

For the Northern District of California

1  sufficiently severe.  Hong has alleged numerous incidents of harassment, which the court

2  does not find to be isolated.  Additionally, the court finds that the frequency and the context

3  of the alleged conduct create a triable issue of fact regarding the severity.

4              c.      Sexual Favoritism

5          Hong also contends that Right created intolerable working conditions by allowing

6  widespread sexual favoritism or "reverse discrimination."  *See Miller v. Dep't of Corrections*,

7  36 Cal.4th 446 (Cal. 2005).  She argues that Greenway heavily favored those women with

8  whom he was having sexual affairs, including Holland and Mora, for salary increases,

9  promotions, bonuses, working hours, and favorable account assignments.

10         Right again posits a number of arguments in opposition to a sexual favoritism claim.

11  Most significantly, Right asserts that Hong did not exhaust the sexual favoritism claim.  Right

12  also notes that Hong did not advance the claim in her complaint or in her initial disclosures.

13         Based on the discussion set forth above regarding exhaustion, the court finds that

14  Hong is barred from asserting sexual favoritism as a basis for her harassment claim

15  because she failed to exhaust the claim administratively.  As noted, Hong failed to mention

16  Greenway and/or Pinola's misconduct in her administrative complaint.  The administrative

17  complaint did not allege sexually hostile or inappropriate conduct with respect to any Right

18  supervisors except Klein.  Furthermore, plaintiff's complaint in this case does not include a

19  favoritism claim.

20             d.      Conclusion

21         In conclusion, the court GRANTS defendant's motion for summary judgment in part

22  and DENIES it in part as to the harassment claim.  The motion is GRANTED in so far as

23  Hong is precluded from basing the harassment claim on allegations regarding Greenway's

24  and Pinola's misconduct.  Hong is also barred from asserting sexual favoritism as a basis for

25  the harassment claim.

26         The court, however, finds that there is a triable issue regarding the existence of

27  hostile environment sexual harassment based on Klein's conduct toward Hong and his

28                                            16

**United States District Court**
For the Northern District of California

1  conduct toward other female Right employees, and DENIES summary judgment on these

2  grounds.

3      2.     Discrimination Claim

4      To establish a prima facie case of employment discrimination based on disparate

5  treatment for sex discrimination, Hong must show that 1) she is a member of a protected

6  class, 2) she suffered an adverse employment action; 3) there is a causal connection

7  between her protected status and the adverse employment action; and 4) similarly-situated

8  individuals outside the relevant class were treated better than she was.  *Peterson v.*

9  *Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004), *citing McDonnell Douglas v. Green*,

10  411 U.S. 792, 802-03 (1973)).

11      If Hong can satisfy this prima facie case, the burden of proof then shifts to Right to

12  "articulate a legitimate, nondiscriminatory reason" for the adverse employment action.

13  *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002).  If Right can do so, the burden shifts

14  again to the plaintiff to demonstrate that the alleged legitimate reason is in fact a pretext for

15  discrimination.  *Id.*  Hong "can avoid summary judgment only by demonstrating through

16  specific, substantial evidence that the real reason for her termination was her gender."  *Horn*

17  *v. Cushman & Wakefield Western, Inc.*, 72 Cal.App.4th 798, 806-07 (Cal. Ct. App. 1999).  In

18  showing pretext, Hong may "demonstrate either (by additional facts or legal argument) that

19  the defendant's showing was in fact insufficient or (by competent evidentiary materials) that

20  there was a triable issue of fact material to the defendant's showing."  *Martin v. Lockheed*

21  *Missiles*, 29 Cal.App.4th 1718, 1732 (Cal. Ct. App. 1994).

22      Right argues that Hong cannot make out a claim for gender discrimination because:

23  (1) she cannot demonstrate that she suffered any adverse employment action or a

24  connection between the alleged conduct and her gender; (2)  Right had legitimate, non-

25  discriminatory business reasons ("LNBR") for Hong's termination; (3) because Greenway

26  was responsible for hiring plaintiff and discharging her, the "same actor inference" applies,

27

28                                          17

United States District Court

For the Northern District of California

1   and Hong's burden of proof is heightened; and (4) Hong cannot demonstrate that Right's

2   non-discriminatory reasons were pretext.

3            a.     Prima Facie Case

4         Right argues that acts comprising the lengthy list of Klein's alleged misconduct,

5   including giving more favorable job assignments to male employees, excluding Hong from

6   business dinners, unjustly criticizing her performance, requesting things on an expedited

7   basis, and not allowing her to train new employees, do not constitute "adverse employment

8   actions." *Brooks*, 229 F.3d at 918, 921 (being ostracized, having difficulty getting desired

9   work and vacation dates, criticism, and unwarranted performance evaluation were not

10  adverse action); *Strother v. Southern Cal. Permanente Medical Group*, 79 F.3d 859, 869

11  (9th Cir. 1996).  Right also contends that Hong has not demonstrated that such actions were

12  undertaken on the basis of her gender, as opposed to "anything other than the proper

13  exercise of management discretion."

14        Right further contends that because Greenway was responsible for recruiting Hong to

15  return to Right in 2000, and for approving her layoff in 2003, there is "a strong inference that

16  there was no discriminatory action."  *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270-

17  71 (9th Cir. 1996) ("where the same actor is responsible for both the hiring and firing of a

18  discrimination plaintiff, and both actions occur within a short period of time, a strong

19  inference arises that there was no discriminatory motive").  Right points to six additional

20  facts that it claims support an inference of non-discrimination regarding Greenway:  (1) that

21  he actively recruited Hong to return in 2000, despite warnings regarding Hong from his

22  predecessor, Dorman; (2) that he offered Hong the RMP position initially; (3) that he

23  promoted Hong to CSC4 in June 2001; (4) that he appointed Hong to the President's

24  Advisory Council in 2002; (5) that he prohibited RMP Mellon from taking more aggressive

25  performance measures against Hong; and (6) that he saved Hong's job in August 2002

26  when Klein wanted to terminate her.

27

28                              18

United States District Court

For the Northern District of California

1    Right also argues that there is a strong inference of non-discrimination based on

2  Klein's actions.  Right notes that Klein hired three CSCs during his tenure as RMP, one of

3  whom was female.  It further asserts that at the time of Hong's layoff, Klein supervised three

4  female CSCs and two male CSCs, and initially only recommended one male CSC, Engler,

5  for layoff.  Right suggests that these facts demonstrate that Klein's actions were gender-

6  neutral.

7    While the court agrees that Hong is unable to make a prima facie showing of gender

8  discrimination as to *Greenway*, it nevertheless concludes that she has made a sufficient

9  prima facie showing that *Klein* discriminated against her based on her gender.  The same

10  actor inference applies to Greenway, who hired Hong.  Additionally, as set forth by Right, a

11  long list of undisputed evidence undermines any prima facie case of discrimination as to

12  Greenway.  Finally, for the reasons discussed above with respect to the harassment claim,

13  Hong is unable to base her gender discrimination claim on Greenway's conduct because

14  those allegations are unexhausted.

15    However, the same analysis does not apply with respect to Klein.   First, there is no

16  dispute that Klein did not hire Hong; and the same actor inference is therefore inapplicable.

17  Second, the allegations regarding Klein are exhausted.

18    As for the other elements of Hong's prima facie case, the fact that Hong was

19  terminated pursuant to Klein's decision to recommend her inclusion in the RIF is sufficient

20  adverse action.  The court further finds that with respect to Klein, Hong has demonstrated a

21  triable issue as to whether there is a causal connection between her protected status and

22  the adverse employment action.

23         b.    LNBR/Pretext

24    Right also asserts several LNBRs for Hong's termination, which fall into three

25  categories:  (1) Hong's performance and personality issues; (2) Right's changing business

26  structure to integrate organizational consulting ("OC"); and (3) Right's national RIF.

27    Right notes that prior to Klein's hiring, Hong had received what it characterizes as a

28                                        19

United States District Court

For the Northern District of California

negative performance evaluation from RMP Mellon and had a bad reputation with Greenway's predecessor, Dorman.  Additionally, Right cites to the declaration of Wright, the then-manager of the OC group for the Pacific Northwest, who allegedly called for Hong's and Maxfield's termination because of his difficulties working with them.  Right further notes that Klein counseled Hong on numerous occasions regarding her poor performance.  Right also asserts that it terminated Hong because her "new business development and OC business efforts were abysmal and she had a history of significant performance problems."  Furthermore, Right notes that it was undergoing a "radical change in its business" at the time of Hong's layoff.  At that time, it was emphasizing the OC business, an area in which it claims Hong's performance was especially poor.

Hong argues that Right's LNBRs are pretextual based on inconsistencies in the evidence and the timing of Right's decision to fire Hong.  First, Hong disputes Right's characterization of her performance.  She notes that in Greenway's deposition testimony, he conceded that "Hong was consistently a top revenue producer throughout her employment at Right."  She further notes that Greenway selected her for the President's Advisory Council.  While Hong admits that her new and OC business fell short of Klein's goals, she asserts that her revenue was "on par or higher than other employees of the San Francisco office who were not fired."  She also argues that her revenue numbers would have been higher if she had not been sabotaged by Klein and subjected to his favoritism of male employees.  Hong further notes that Klein was intent on firing her as soon as he arrived at Right.

Right, in reply, points out evidence that Hong had performance issues with RMPs Mellon, Beck, and Dorman before Klein arrived.  Further, as for the PAC, Right suggests, based on Greenway's deposition testimony, that Greenway's selection of Hong for the honor was to signal to her that she could still "fix her performance issues."

Although a RIF, like that alleged by Right, is a legitimate non-discriminatory reason for termination, to the extent that Right asserts that Hong was selected for the RIF based on

20

**United States District Court**

For the Northern District of California

her performance, she has sufficiently demonstrated pretext via evidence that she was clearly recognized by Right as a top performer on several occasions.  *See Martin*, 29 Cal. App. 4th at 1732.

For these reasons, the court DENIES defendant's motion for summary judgment as to this claim.

3.      Failure to Prevent Violations Claim

Hong also argues that Right violated FEHA and its own employment policies by "fail[ing] to take all reasonable steps necessary to prevent discrimination and harassment from occurring."  Gov.C. § 12940(I).

California Government Code § 12940 provides that "[i]t shall be an unlawful employment practice, unless based upon a bona fide occupational qualification . . . [f]or an employer . . .  to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."  The California Supreme Court has stated that FEHA "makes it a separate unlawful employment practice" for an employer to violate § 12940(k).  *State Dept. of Health Services v. Superior Court*, 31 Cal.4th 1026 (Cal. 2003).

However, it is also clear that there can be no violation of 12940(k) absent a finding of actual discrimination.  *See Tritchler v. County of Lake*, 358 F.3d 1150, 1155 (9th Cir. 2003) (holding the district court did not abuse its discretion in requiring a finding of actual discrimination before a violation of section 12940(k) becomes actionable) (citing *Trujillo v. North County Transit Dist.*, 63 Cal.App.4th 280, 283-84 (Cal. Ct. App. 1998)).  "[T]here's no logic that says an employee who has not been discriminated against can sue an employer for not preventing discrimination that didn't happen."  *Trujillo*, 63 Cal.App.4th at 289.

Hong asserts that "despite the numerous complaints made by [her] and others to Greenway about Klein's offensive treatment toward women and discriminatory behavior, no action was taken."  She contends that Right's own policy required that a report be made to the VP of Human Resources, which was not done.  She also states that neither she nor Maxfield were contacted for follow-up, and that Greenway's alleged inaction "gave Klein free

21

license to harass his female subordinates."

Right argues that because summary judgment should be granted regarding Hong's claims for discrimination and harassment, it must also be granted on this claim as well. Right further argues that the claim must also fail because it took the requisite reasonable steps to prevent discrimination and harassment, noting that Klein received its employee handbook and participated in sexual harassment training. *See Montero v. Agco Corp.*, 192 F.3d 856, 862 (9th Cir. 1999).

Because the court determines that triable issues exist with respect to Hong's harassment and discrimination claims, it DENIES Right's motion for summary judgment as to this claim. The court further notes that Hong has demonstrated a triable issue as to whether Greenway and Klein complied with the company's harassment policies; thus, Right is not entitled to summary judgment based on the existence of the handbook and the company training alone. *See, e.g., Faragher*, 524 U.S. at 807 (existence of policy relevant to whether employer exercised reasonable care to prevent harassment).

4.    Retaliation Claim

Hong also claims that Klein's harassing behavior intensified after she voiced her concerns to Greenway regarding Klein's treatment of female staff.

FEHA protects employees against retaliation for making a complaint or for opposing conduct made unlawful under the Act. Gov.C. § 12940(h). The standards for a retaliation claim are the same under FEHA as Title VII. *Flait v. North American Watch Corp.*, 3 Cal.App.4th 467, 476 (Cal. Ct. App. 1992). The elements require that: (1) the plaintiff establish a prima facie case of retaliation; (2) the defendant articulate a legitimate, nonretaliatory explanation for its acts; and (3) the plaintiff show that the defendant's proffered explanation is merely a pretext. *Id.*

To establish a prima facie case of retaliation in violation of FEHA, a plaintiff must: (1)

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1   show that he or she engaged in a protected activity;[5] (2) that the defendant subjected her to

2   an adverse employment action; and (3) that a causal link exists between the protected

3   activity and the adverse action. *Akers v. County of San Diego*, 95 Cal.App.4th 1441, 1453

4   (Cal. Ct. App. 2002); *Fisher*, 214 Cal. App. 3d at 614. In other words, a plaintiff must

5   demonstrate a causal relationship between protected complaints and an adverse

6   employment action. *Brooks*, 229 F.3d at 928.

7   　　　Hong appears to focus this claim on alleged retaliation by Klein as opposed to

8   Greenway. She contends that Klein's hostile and abusive behavior toward her in spring

9   2002 occurred around the same time that Greenway would have related Hong's complaints

10   regarding Klein to Klein.

11   　　　The evidence demonstrates that Hong first complained to Greenway regarding

12   Klein's alleged gender-based discrimination and harassment in March 2002. Hong

13   subsequently complained to Greenway regarding Klein's gender-based misconduct in May

14   and June 2002. Right does not dispute that these complaints were made, or that the

15   complaints constituted protected activity.

16   　　　Instead, Right challenges the existence of a causal link between Hong's complaints

17   regarding Klein and any adverse actions. Right, citing to Klein's declaration and

18   Greenway's deposition testimony, asserts that Klein was unaware of any of the complaints

19   Hong made about him to Greenway. Right also emphasizes a pre-complaint counseling

20   session on January 23, 2002, that Klein held with Hong regarding her performance to

21   suggest that Klein's post-complaint performance meetings and reviews with Hong were not

22   causally connected to Hong's complaints.

23   　　　Hong does not cite to any evidence demonstrating that Klein had knowledge of her

24   

25   　　　[5]Under FEHA, all that is required with respect to the complaints is that the employee have a *reasonable belief* that the employer was engaging in discriminatory or harassing conduct. *See L'Oreal*, 36 Cal.4th at 1048. Additionally, a formal complaint and/or legal terms and buzzwords are not required. *See id.* It is sufficient that an "employee's comments, when read in their totality, oppose discrimination." *Id.*

26   

27   

28

**United States District Court**

For the Northern District of California

1   complaints to Greenway, but instead argues that "[w]hile Greenway and Klein deny that

2   Klein was informed of the complaints made by Hong and Maxfield about [Klein], their

3   credibility is one of the central issues that will be submitted to the jury for its determination."

4   Oppos. at 22.  Hong also suggests that the close proximity in time between her complaints

5   and the alleged adverse actions implies a causal connection.

6        "Essential to a causal link is evidence that the employer was aware that the plaintiff

7   had engaged in the protected activity."  *Morgan v. Regents*, 88 Cal.App.4th 52, 70  (Cal .Ct.

8   App. 2000).  "[I]n some cases, causation can be inferred from timing alone where an

9   adverse employment action follows on the heels of protected activity."  *Villiarimo v. Aloha*

10  *Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) ("nearly 18-month lapse between

11  protected activity and an adverse employment action is simply too long, by itself, to give rise

12  to an inference of causation"); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)

13  (causation existed where adverse action occurred less than three months after complaint

14  was filed); *Flait*, 3 Cal.App.4th at 478 (sufficient causal link where employee was terminated

15  a "few months" after engaging in protected conduct).  The Ninth Circuit has, however,

16  cautioned that a "specified time period cannot be a mechanically applied criterion.  A rule

17  that any period over a certain time is per se too long (or, conversely, a rule that any period

18  under a certain time is per se short enough) would be unrealistically simplistic."  *Coszalter v.*

19  *City of Salem*, 320 F.3d 968, 977-78 (9th Cir. 2003).

20       The short periods of time between the complaints and adverse actions here –

21  sometimes only days and at most several months – might give rise to an inference sufficient

22  to satisfy this element of Hong's prima facie case.   However, as noted, Klein had already

23  begun counseling Hong regarding her performance prior to her first complaint to Greenway,

24  evidence that tends to dispel an inference of retaliation.  Additionally, Hong has not

25  introduced any evidence that Klein was aware of the complaints.  "In the absence of

26  evidence that . . . [Klein] w[as] aware of [Hong's] past filing of a grievance, the causal link

27  necessary for a claim of retaliation cannot be established."  *Morgan,* 88 Cal.App.4th at 72

28

1   (plaintiff's claim that rehiring applications were rejected based on prior EEOC complaints

2   failed where plaintiff "presented no evidence to directly refute the declarations disclaiming

3   knowledge of his prior grievance").

4        However, to the extent that Hong also intended to base her claim on alleged

5   retaliation by Greenway, there can be no dispute that Greenway was aware of the

6   complaints because Greenway was the person to whom Hong complained.  There is also no

7   evidence, as with Klein, that Greenway had taken any disciplinary action against Hong prior

8   to her complaints to him regarding Klein.[6]

9        However, there is other strong evidence that tends to break the causal link between

10  Hong's complaints and any retaliatory action on Greenway's part.  It is undisputed that Hong

11  complained to Greenway regarding Klein's behavior in March, May, and June 2002.

12  Following those complaints and prior to Hong's February 2003 termination, Greenway

13  intervened on Hong's behalf in August 2002 and refused to terminate her pursuant to Klein's

14  recommendation.  This intervening favorable treatment is sufficient to dispel any inference of

15  a causal link between Hong's protected activity and the adverse action.  *See Manatt v. Bank*

16  *of America*, 339 F.3d 792, 802 (9th Cir. 2003) (employer's decision to give plaintiff a pay

17  raise and selection for prestigious assignment between time of plaintiff's complaint and

18  decision not to promote her dispelled any causal link necessary for retaliation claim).

19       Because Hong has failed to establish a prima facie case for retaliation, the court

20  GRANTS defendant's motion for summary judgment as to this claim.

21       5.       Wrongful Termination in Violation of Public Policy Claim

22       Defendant did not address this claim separately in its motion, but appears to argue

23  that summary judgment should be granted as to this claim for the same reasons that it

24  should be granted on the preceding claims.

25  _____

26       [6]In fact, the opposite is true.  Greenway hired, promoted, and appointed Hong to the
    President's Advisory Council.

27

28
                                        25

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    To establish a claim of wrongful discharge in violation of public policy under California

2    law, plaintiff must show:  1) that she was terminated from her employment,

3    2) that the termination was a violation of public policy, i.e., that there was a nexus between

4    the termination and the plaintiff's status or protected activity, 3) and damages.  *Turner v.*

5    *Anheuser-Busch, Inc.*, 7 Cal.4th 1238, 1258-59 (Cal. 1994).

6    In order to support a wrongful discharge claim under California law, a public policy

7    must be (1) delineated in either constitutional or statutory provisions; (2) "public" in the

8    sense that it "inures to the benefit of the public" rather than serving merely the interests of

9    the individual; (3) well established at the time of the discharge; and (4) "substantial" and

10   "fundamental."  *Stevenson v. Superior Court*, 16 Cal.4th 880, 901 (Cal. 1997).  A discharge

11   in violation of FEHA may give rise to a common law claim for wrongful discharge.

12   *Stevenson*, 16 Cal. 4th at 901.  The fundamental public policy against sex discrimination

13   and sexual harassment in the workplace is rooted in the California Constitution.  *Rojo v.*

14   *Kliger*, 52 Cal.3d 65, 89 (Cal. 1990).

15   Because the court concludes that triable issues exist regarding plaintiff's harassment

16   and gender discrimination claims, the court also DENIES summary judgment on this claim.

17        6.    Negligent Infliction of Emotional Distress

18   Hong also contends that she is entitled to recover damages for negligent infliction of

19   emotional distress under common law.  The elements of a cause of action for negligent

20   infliction of emotional distress include: (1) the defendant engaged in negligent conduct; (2)

21   the plaintiff suffered serious emotional distress; and (3) the defendants' negligent conduct

22   was a cause of the serious emotional distress.  *Butler-Rupp v. Lourdeaux*, 134 Cal.App.4th

23   1220, 1226 n.1 (Cal. Ct. App. 2005).

24   Right argues that any emotional injury that Hong suffered as a result of her

25   employment or termination is preempted by the workers compensation system.  *Robomatic,*

26   *Inc. v. Vetco Offshore*, 225 Cal.App.3d 270, 275 (Cal. Ct. App. 1990); *Shoemaker v. Myers*,

27   52 Cal.3d 1, 19-20 (Cal. 1990).

28

United States District Court

For the Northern District of California

1        Because the worker's compensation system provides the exclusive forum for

2   employees seeking redress for workplace remedies, a plaintiff cannot bring a common law

3   infliction of emotional distress claim for "ordinary employer conduct that intentionally,

4   knowingly, or recklessly harms [him]." *Fermino v. Fedco, Inc.*, 7 Cal.4th 701, 714 (Cal.

5   1994).  That limitation however, "does not apply ... when the 'injury is a result of conduct,

6   whether in the form of discharge or otherwise, not seen as reasonably coming within the

7   compensation bargain.'"  *Kovatch v. California Case Management Co.*, 65 Cal.App.4th

8   1256, 1277 (Cal. Ct. App. 1998) (holding that the Workers' Compensation Act does not

9   preempt intentional infliction of emotional distress claims predicated upon wrongful

10  termination in violation of public policy) (quoting *Shoemaker*, 52 Cal.3d at 19-20), *overruled

11  on other grounds by Aguilar v. Atlantic Richfield Co.*, 25 Cal.4th 826 (Cal. 2001); *see also

12  City of Moorpark v. Superior Court*, 18 Cal.4th 1143, 1154-55 (Cal. 1998) (employee's

13  wrongful discharge claim based on disability discrimination not subject to exclusive

14  jurisdiction of workers' compensation); *Accardi*, 17 Cal.App.4th at 341 (workers'

15  compensation not the exclusive remedy for emotional distress claim based on sexual

16  harassment discrimination in violation of the FEHA).

17       Here, like the cases cited above, Hong's emotional distress claims, based on the

18  alleged sexual harassment and discrimination, are not barred because "the distress is

19  engendered by an employer's illegal practices."  *Murray v. Oceanside Unified School Dist.*,

20  79 Cal.App.4th 1338, 1362 (Cal. Ct. App. 2000) ("claim for emotional and psychological

21  damage, arising out of employment, is not barred where the distress is engendered by an

22  employer's illegal discriminatory practices").  The court therefore concludes that there is a

23  triable issue as to whether the injury Hong suffered was the result of conduct not seen as

24  reasonably coming within the compensation bargain.  Summary judgment on this claim is

25  DENIED.

26

27       7.      Intentional Infliction of Emotional Distress

28                                           27

United States District Court

For the Northern District of California

1    Hong also alleges a claim for intentional infliction of emotional distress.  The

2  elements of a cause of action for intentional infliction of emotional distress include: (1)

3  extreme and outrageous conduct by defendant; (2) intention to cause or reckless disregard

4  of the probability of causing emotional distress; (3) severe emotional suffering; and (4)

5  actual and proximate causation of the emotional distress.  *See Cole v. Fair Oaks Fire*

6  *Protection Dist.*, 43 Cal.3d 148, 155 (Cal. 1970).

7    In addition to the workers compensation preclusion argument addressed above, Right

8  argues that Hong is unable to demonstrate the "outrageous conduct" element for infliction of

9  emotional distress.  Right, however, makes the same arguments as to this element that this

10  court rejected regarding the harassment claim.  Right contends that the only conduct that

11  Hong alleges consisted of isolated and sporadic instances.

12    Because the court has concluded that triable issues exist regarding the harassment

13  and discrimination claims, and because "[i]t is settled that employment discrimination,

14  particularly that involving sexual harassment, can cause emotional distress and that such

15  distress is compensable under traditional theories of tort law," summary judgment is also

16  DENIED with respect to this claim.  *See Murillo v. Rite Stuff Foods, Inc.*, 65 Cal.App.4th 833,

17  848 (Cal. Ct. App. 1998).

18  **C.    Parties' Evidentiary Objections**

19    1.    Defendant's Objections

20    In support of its motion, Right submitted a 225-page document in objection to Hong's

21  evidence, which contained 390 individual objections.  Right essentially objects to plaintiff's

22  declaration and supporting exhibits line by line.  The objections are generally for lack of

23  foundation, relevance, misleading, and in a few instances, "contradictory" based on alleged

24  contradictions between plaintiff's declaration and deposition testimony.  As the court stated

25  on the record, it will not rule on each of the individual objections.  However, the court rules

26  as follows with respect to the general categories of Right's objections.

27    a.    Office Romance Gossip

28                                    28

United States District Court

For the Northern District of California

1    Right objects to evidence regarding Greenway's relationships with Holland and Mora,

2 and Pinola's behavior with respect to Carol Weibley as irrelevant and unduly prejudicial.

3 The court finds that the evidence is indeed irrelevant because: (1) plaintiff can not raise the

4 allegations in conjunction with her claims since the allegations are unexhausted; and (2)

5 with respect to Pinola, plaintiff was not aware of the conduct, so it cannot serve as support

6 for her hostile environment harassment claim.

7    For these reasons, the court SUSTAINS the objections.

8        b.    Co-Workers' Opinions Re: Plaintiff's Performance

9    Right argues broadly for exclusion of Craig's and Maxfield's testimony on the basis

10 that they did not supervise plaintiff, and that, therefore, their opinions are irrelevant.

11    However, Craig's and Maxfield's testimony are not primary sources of evidence

12 regarding plaintiff's performance.  Instead, plaintiff's performance evidence comes directly

13 from Greenway himself, who testified regarding his recruitment of Hong, his selection of her

14 for the President's Advisory Counsel, from former supervisor Christine Mellon, from plaintiff,

15 from plaintiff's exhibits, which consist of Right letters recognizing her performance, Right

16 revenue documents, and Right performance evaluations and related correspondence.

17    Instead, Craig testified primarily regarding plaintiff's "likeability" and reputation at

18 Right – subjects on which Craig did indeed have personal knowledge and a basis for

19 testifying.  Craig's testimony on these subjects is also relevant because Right argued that

20 another reason for adverse employment action was Hong's difficult personality and inability

21 to get along with co-workers.

22    Maxfield's testimony was similar to Craig's.  Neither appears to have testified as to

23 matters that were outside of their personal knowledge, such as performance evaluations or

24 employment honors.  Accordingly, Right's objections are OVERRULED.

25        c.    Co-Worker Craig's Opinions Regarding Klein

26    Right also contends that to the extent Hong relies on Craig's testimony regarding

27 Klein's treatment of employees, such reliance is misplaced because Craig did not work in

28

United States District Court

For the Northern District of California

1    the San Francisco office and has admitted that she was not in a position to observe Klein's

2    alleged favorable treatment of male employees.

3        The evidence reveals that Craig conducted meetings that included San Francisco

4    employees, and also occasionally worked with the San Francisco office. The evidence does

5    not suggest that Craig was isolated in the Silicon Valley office.

6        The court therefore OVERRULES this objection.

7            d.     Plaintiff's Declaration and Deposition Testimony

8        Right argues that Hong's declaration contradicts her deposition testimony. It

9    contends that Hong cannot now "manufacture new instances of alleged harassment in a

10   declaration . . . crafted for the sole purpose of defeating summary judgment." *See Burrell v.*

11   *Star Nursery*, 170 F.3d 951, 954 (9th Cir. 1999). This court's review of the declarations and

12   deposition testimony does not reveal any such manufactured allegations. The court

13   therefore OVERRULES Right's objection.

14        2.     Plaintiff's Objections

15        Plaintiff filed her evidentiary objections late Thursday, January 26, 2006. The

16   majority of plaintiff's objections concerned evidence Right submitted in support of its

17   opening papers. Therefore, as stated on the record, those objections, which were due with

18   plaintiff's opposition no later than January 11, 2006, are untimely and are STRICKEN.

19        The court has, however, considered plaintiff's objections to evidence Right submitted

20   in conjunction with its reply. Those objections concern portions of Hong's deposition

21   testimony submitted via Arena's declaration on reply. The court rules as follows:

22        (52)    SUSTAINED. Defendant has miscited the portions of plaintiff's deposition

23               testimony that support the particular assertions in the reply brief that it claims it

24               supports.

25        (53)    OVERRULED. Defendant's argument construing plaintiff's deposition

26               testimony is appropriate and accurate.

27        (54)    SUSTAINED IN PART AND OVERRULED IN PART. The objection is

28

United States District Court

For the Northern District of California

1     sustained only to the extent that defendant cites to plaintiff's deposition

2     testimony for the proposition that "plaintiff agreed that the criticism was valid"

3     because it misrepresents plaintiff's testimony.

4  **D.   Parties' Sealing Requests**

5     Prior to the hearing, the parties submitted numerous sealing requests with respect to

6  numerous documents, including briefs, exhibits, and deposition testimony.  At the hearing,

7  the plaintiff withdrew all of her requests to seal.  Defendant withdrew all of its requests to

8  seal with the exception of Greenway's testimony regarding his private consensual

9  relationships with third parties.

10     The court finds that the evidence is marginally if at all probative to any of plaintiff's

11  claims since plaintiff has failed to exhaust those allegations and is therefore barred from

12  using this evidence as a basis for her claims.  Accordingly, the court GRANTS defendant's

13  request to seal ONLY Greenway's testimony as described above pursuant to L.R. 79-5.

14  Defendant shall resubmit its redacted and unredacted materials to conform to the above

15  ruling.

16                              **CONCLUSION**

17     For the reasons set forth above, the court GRANTS IN PART defendant's motion for

18  summary judgment as to Hong's harassment claim.  The motion is GRANTED to the extent

19  that Hong is precluded from basing the harassment claim on allegations regarding

20  Greenway's and Pinola's misconduct as discussed above; plaintiff is also barred from

21  asserting sexual favoritism as a basis for the claim.  The court, however, finds that there is a

22  triable issue regarding the existence of hostile environment sexual harassment based on

23  Klein's conduct toward Hong and his conduct toward other female Right employees; and

24  DENIES summary judgment on these grounds.  The court also GRANTS summary

25  judgment on plaintiff's retaliation claim.

26     The court DENIES summary judgment on plaintiff's gender discrimination, failure to

27  prevent violations, wrongful termination, negligent infliction of emotional distress, and

28

intentional infliction of emotional distress claims.

**IT IS SO ORDERED.**

Dated: February 14, 2006

_____
PHYLLIS J. HAMILTON
United States District Judge